The next case this morning is number 520151 People v. Miller. Arguing for the appellant Donald Miller is Elizabeth Pratti. Arguing for the appellee People of the State of Illinois is Sharon Chanahan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Good morning ladies. The clerk is permitted to record these proceedings. Sorry, I jumped the gun on that. Good morning. Morning, your honor. Ms. Pratti, you want to begin? Yes, your honor. May it please the court, counsel. My name is Elizabeth Pratti and I represent Donald Miller in this matter. Almost 13 years ago, on October 25, 2009, my client lost his son. His partner put their four-month-old baby down to sleep and the two of them woke up to find him unresponsive and unrevivable. Their child's death was and is an unmitigated tragedy. Compounding this tragedy, Mr. Miller was convicted of murdering his own son and has been in prison for the past nearly 13 years since his son's death because he did not and he does not have the money to obtain an expert who could explain the scientific facts underlying the issue of causation in this case. And the first key fact is that a forensic pathologist cannot tell from an autopsy alone whether a baby such as Ashton died from sudden infant death syndrome, sleep-related asphyxia, or homicidal suffocation. And second, that the state's expert gave incredible testimony, including that she could definitively tell that certain minor bruising on the baby's body had occurred within the 10 minutes before the baby's death. And this is not scientifically accurate. So it's important to remember what is at stake in this appeal. And that's that Mr. Miller was convicted of murdering his own infant son and in prison based on inaccurate and incomplete science. Subject to this court's questions, I want to first clarify the complex procedural posture in this case and then briefly address the first issue from the briefs that this court should reverse and remand for new second stage post-conviction proceedings with directions for the trial court to provide some means of appointment of a forensic pathology expert because expert assistance is absolutely crucial to proper presentation and resolution of Mr. Miller's claims of constitutional error. So turning to the procedural posture of this case, this has been up and down on appeal and I know that this is a new panel, so I want to make sure we're all on the same page about a few key issues. And this case originally went to jury trial and the key issue of trial was causation. On direct appeal, the only issue raised was a matter of reasonable doubt. Mr. Miller then filed a pro se post-conviction petition alleging ineffective assistance of trial counsel for failing to obtain a forensic pathology expert, call certain name witnesses and properly advise him about his right to testify. Counsel was appointed and that case was denied at the second stage. This court then reversed because the counsel who was appointed represented Heather Smith, who is the baby's mother, who testified against Mr. Miller in these proceedings. So on remand, new post-conviction counsel was appointed and he too wanted an expert, but unfortunately the counsel was unfamiliar with the law or the steps of the post-conviction process. And so we are here again asking for a remand to the second stage for proper resolution of this case. Turning to the key issue in this case, um, these matters require expert assistance. The science underlying it is complicated and there needs to be some input from an expert in order to properly address what the impact of trial counsel's failure to retain an expert could have been at trial. So we're not asking this court to, and it's not appropriate at this stage to resolve the merits of Mr. Miller's arguments. We're not asking for a reversal of his conviction and we're certainly not asking for a blank check or for this court to pull Dr. Tease out of requirement. What we're asking here is for this court to remand to the trial court with directions for some provision of an expert. It can then be up to the trial court, the means of procuring funding and how to go about those proceedings. But based on the issues at trial and the issues in the post-conviction proceedings, some expert assistance is necessary. And we know that for a number of reasons, but chiefly because Dr. Tease has told us so through her letters to the court and to, I mean, to previous counsel and to Mr. Miller that appear in the record. Dr. Tease is a forensic pathologist who looked at the autopsy reports, looked at photographs, looked at some of the transcripts and indicated that she didn't see obvious evidence to conclude that this was homicidal suffocation. And she did conclude that causation was a key issue in this case. She then wasn't able to continue in the case because she didn't get assistance from prior post-conviction counsel in getting the additional information that she needed. She needed help getting slides and other information and some degree of funding so that she could proceed in the case. So that is how we know that her testimony would be helpful or some experts assistance would be helpful. And that's the standard here at the second stage of proceedings for an expert.  And based on the petition and Dr. Tease's information, we know that it would. Now, the underlying issue here was trial counsel's failure to obtain an expert. And we know that that failure was not strategic because again, counsel's letter tells us so. Trial counsel provided a letter for the pro se petition indicating that he did want an expert and he looked for an expert. And that he didn't get one because he didn't think that his office had funding. However, the law provides that a court can and should provide funding if that is a critical issue in the trial like this was. But counsel never asked for that funding. So we again have an issue where counsel wants an expert, counsel needs an expert, but doesn't take the necessary legal steps or procedural steps to obtain an expert. And it's important here to go through and look at the issues here. We're talking about what the state's own expert describes as a subtle homicide. And what we know as well is that there are, we have many of the signs and symptoms or risk factors for sudden infant death syndrome or sleep-related asphyxia where the mother herself put the baby face down to sleep on a soft couch. And at trial here, we're really looking at two things. We have Heather Smith's testimony and Dr. Nanduri's testimony. One of them alone is not enough to convict Mr. Miller of murder. We have the forensic pathology saying it looks probably like a homicidal suffocation. And then we have Heather Smith's testimony about certain acts of holding the baby, shaking the baby, pushing the baby down, none of which came out until or none of which she claimed until after she was confronted with her own charge for first degree murder. And then it was at that point where she begins to tell a tale about Mr. Miller's actions. But even so, she still maintains that it was she herself who placed this baby down to sleep face down on a soft couch. So again, these issues are complicated and complex and require expert assistance to, of some form and some degree to properly lay these out for the trial court and to get to the bottom of the constitutional issues. So unless this court has questions in my remaining minute, I'll just briefly address the second issue in the briefing, which is that in addition to post-conviction counsel's failure related to the expert, he additionally failed to comply with 651C in numerous ways. First, there should be no presumption of compliance in this case because post-conviction counsel filed certificates that were on their face contradictory. He said that he read the proceedings related to the guilty plea and also related to the trial. So if this certificate passes muster, it swallows the rule essentially. Additionally, he didn't understand the basic steps of the post-conviction process. He thought he could call witnesses at the second stage. He didn't understand it wasn't an evidentiary hearing. And he didn't correct very blatant misstatements at that hearing as well, such as that all of these issues were raised on appeal previously and counsel didn't go back and explain. That simply isn't complying with the duties of 651C. Thank you. Okay, Ms. Crowdy. Thank you. You know that you'll have a few minutes after Ms. Shanahan's argument. Ms. Shanahan, I want to ask you a question before you get started because in the brief, it seems to me that the state took the position that the trial court may have been wrong in its determination that it couldn't appoint an expert. Am I reading that correctly? That's correct, Your Honor. Okay. You're not conceding remand here, are you, from the state's perspective? No, Your Honor, I am not. Okay. Then go ahead and proceed, please. Okay. First of all, as far as whether remand is needed, although it is error and the state agrees that it's error when a state refuses to exercise its discretion, thinking it doesn't have discretion, but that doesn't require, it's an error, it doesn't mean it's a reversible error. And as our Supreme Court has said in both People v. Queen and People v. Gibson, the effect of such a failure should be assessed in the context of the entire proceeding. So it's not just, you thought he didn't have discretion, that's reversible error. This court needs to examine the context of the entire proceedings. Here, when we look at the trial court, the post-conviction court's actions, the defense counsel's actions, state's actions, it's clear that this was not reversible error. The post-conviction court studied the brief and opinions filed by the appellate defender when this case was on direct appeal. In fact, it's sort of an odd thing. The counsel, Bob Burke, counsel for the defendant on his direct appeal, who was an appellate defender at that time, actually drafted the post-conviction petition in this case for some reason. But in any case, the current post-conviction court studied that brief. He studied the brief of current appellate counsel in the instant case. That brief, just like this brief, talks about the, and I put this in quotes in my brief, and I intend to keep it in quotes, readily available scientific resources that supported the claim. And then there were attachments to the post-conviction petition that were also considered. And the trial court considered those all. He considered the affidavit of former appellate counsel, Bob Burke, although really all Mr. Burke could say was how Dr. Teese sounded, since she sounded shocked. And then he said, and here I quote again, he particularly accepted and relied upon a letter written by Dr. Teese.  He concluded that the cause of death did not directly contradict Dr. Nanduri's theory of the case, and the jury would not be obligated to abandon Dr. Nanduri's theory. I think as this court is aware, Dr. Nanduri is an extraordinarily accomplished and experienced forensic pathologist. And the other thing is that there was an affidavit from trial counsel, and he said that he spoke to Dr. Graham as a possible expert for the defendant. Dr. Graham was unwilling to work on the case. It was determined that the expense of hiring the expert was more than a public defender's office could afford. And I think it's very important that both trial counsel and the post-conviction court believe that the attorney did a more than adequate job of bringing out the weaknesses in Dr. Nanduri's testimony. He made a point of interviewing her, recording her, uh, the interview, impeaching her with some counts from the interview. He made, and as is accepted, a defense not prejudiced. This court in People v. Johnson said the defendant is not prejudiced by trial counsel's failure to hire a medical expert where defendant was given access to all of the medical records and reviewed them and counseled thoroughly and effectively cross-examined the state's expert witnesses. So I think that there is evidence in this case. There is, um, in, I'll use the Supreme Court's language, in the context of the entire proceeding, this failure to exercise discretion did not trap the post-conviction trials, uh, or excuse me, post-conviction court's conclusion. I'd like to move, unless there are any questions here, I'd like to move to, to defend this proposed remedy here, assuming for the sake of argument, um, that this is not just error, but reversible error. I find it ironic, the remedy that, that defendant rather adamantly demands, uh, the first half or two thirds of, of their first issue is, argues about the court not exercising the discretion that it had. But then when it gets to the remedy, it doesn't want the court to use, it doesn't want this to allow that court any discretion at all. It's defendant is demanding that this court insist that an expert be appointed. Discretion means the trial court, it would go back, the trial court would hear why the defendant thinks he is entitled to an expert and state would be able to argue why one is not needed and then the trial court would exercise its discretion and determine whether or not one should be appointed. Um, I mean, though, didn't that happen when, um, they said that they didn't have the funds to appoint one? Wasn't there some discretion exercise at that point? No, your honor. That was just a statement in the, in the, um, um, trial counsel's affidavit. I, well, it, it, it seems to beg the question that if, if one is needed and you don't have the funds, you can't appoint one is what I guess I'm saying. Well, I agree with that. You, you think it's that they couldn't ask for one because there weren't enough funds. I think that the, the affidavit of, of trial counsel shows that he considered it, um, and determined that he could accomplish just as much by interviewing Dr. Nanduri and then, uh, using her recorded, um, testimony to impeach her. It's, it's a decision that it's a strategy, um, to determine whether or not to do it. And certainly it's not a decision that this trial court, this post-conviction court ever made. And that's what we're looking at here is whether this trial court exercise discretion, well, then exercise the discretion. Um, and then, uh, uh, and recently, uh, in people versus L'Engle, the court said an respondent is not entitled to an expert merely because the expert would be useful, helpful, valuable, or important to the defense. So what you're saying is that if, if remand were required, then the post-conviction court should have the discretion on whether to order a new expert, order an expert at all. Absolutely. Okay. I understand. I think I'll leave on that point. Okay. All right. Um, Ms. Crotty, do you have some response? Yes. And I'll do it unmuted this time. Uh, sorry. All right. So just to, just to back up the issue of whether or not to appoint an expert was not before the trial court, um, in the trial proceedings because trial counsel never asked for one trial counsel stated in his letter attached to the, the pro se post-conviction proceeding that the public defender's office didn't have the discretion to do it. So, um, you know, we're not asking for a blank check, we're not asking for exorbitant fees to be approved. We're asking for some degree of assistance from an expert to look at this case. And that would, that issue was not before the trial court in the trial proceedings. And because the prosecution, um, the trial court, um, addressing the post-conviction proceeding and post-conviction counsel didn't understand the law and issues in this case. Um, this was not actually put to post-conviction count the post-conviction court properly. Counsel asked for an expert and then confusingly conceded immediately that that's not appropriate at the second stage, but the trial court didn't believe it had the discretion. So, you know, we're not saying the trial court should not have the opportunity to weigh in on this at all, or give any sort of make, have any discretion at all. What we're saying is that, you know, it is clear based on the proceedings below that an expert, some degree of assistance is necessary and that this court should provide clear direction because the trial court didn't understand this issue. It didn't understand that it could do this and it didn't understand why it should. So, you know, to say that you, you don't oppose Ms. Shanahan's suggestion that the post-conviction court have the discretion. To whether or not to order the expert. Well, respectfully, I think it's a bit of an exercise in futility because this, this issue has been briefed twice now and we're back again with ineffective counsel and a trial court that doesn't understand that it can do this. So certainly if this court feels that that's the best remedy, we understand that. But I think that given the briefings, a little more direction and a little bit more of a I would also want to say that, you know, to say that we're not asking for any discretion at all is not reasonable. It's certainly as noted in the briefings, the court needs to decide the mechanism for doing this. But I also want to jump back to some comments that the state made saying, you know, the court looked at all of this and so we don't need to go back. And a letter from Dr. T saying that this is an issue and that she needs more information is not the same thing as having an expert who got that information and is able to weigh in on the state's expert. That is not the same thing. So, and, and this as discussed in more detail in the reply brief, you know, the cases that the state's citing, yes, this does need to be considered in context. We agree wholeheartedly. But considering it in context is not the same thing as proving prejudice and proving that, you know, Donnie's not able at this stage to prove what an expert would or could say because he's never been given one. So we can't say what an expert would say definitively. All we can do is say what Dr. T's was willing to do in her letters, what secondary sources might show, and that's not the same. And this court should not jump to affirming the issue when we don't have the actual facts before it. Just a moment. And also, I'd like to clarify that it's important to distinguish a bit between, you know, at this point, the case law says that, you know, appointment of an expert at this stage is appropriate if it would be helpful in resolving the issues in this case. And based on the fact that, that all of the attorneys involved have said that this is a, there's an issue of causation. We have another expert saying there's an issue of causation. And these are complex issues. And remand with directions to appoint an expert is appropriate in this case. And so... Counsel, was there anything in the cross-examination of Dr. Nanduri that might have supported the position that there is inadequate scientific knowledge to proceed on and that there is a need for an expert? Anything exposed by defense counsel? So, what we have here is, it's a complicated question, Your Honor, because there are certainly hints in Dr. Nanduri's testimony that this is the type of case that we should have both a consulting and probably a testifying expert. So, Dr. Nanduri talks about it being a subtle homicide. And she says, you know, you can't, at first she says, you know, you can't necessarily tell from the autopsy alone. You need to look at the surrounding evidence. And that's why she asked the police to go back and do more interrogations. So, that alone, I would say, suggests it's really needed for defense counsel to be able to interrogate that fully, to have a consulting expert that then counsel can decide whether or not to call that expert. And then we also get to the point where, you can see throughout the cross-examination, at first she says, near the time of death, near the time of death. And then when pushed on cross-examination, she jumps to this point of that these bruises occurred within 10 minutes of death. And so, to me, considering the secondary sources and just the nature of these cases, that jumps out to me as something that says, well, you can't really rebut that with cross-examination. You need an expert to consult about the validity of that and really to present to a jury on that point. So, if that addresses your question, then thank you. Justice Wharton, any follow-up? No, thank you. Justice Vaughn? Yes, briefly. Judge Knapp did not believe she had the discretion to appoint an expert, but in her order on page 11, does she more or less say that even if she'd had the discretion, she thought an expert was not necessary? She talks about Mr. Burke's affidavit and the letter from Dr. Teese. She finishes, and this court finds that neither the affidavit nor the letter provides sufficient demonstration that petitioner suffered substantial constitutional violation. So, doesn't she, in effect, say, even if I'd had the discretion, I would not have done it? So, the fact that she thought she didn't have discretion is really not a major issue in this case? Well, I have two points that I think are important in considering that. I think in reading that order, I believe what she's saying is, well, the causation isn't an issue. I wouldn't have appointed an expert, but I'm concluding based on what I do have that causation isn't an issue in terms of the ultimate disposition. And I would say to go to that point, second, is that's why this isn't raised purely as an issue of trial court error. This is an issue of both trial court not knowing that it had the discretion, but also post conviction counsel not properly presenting the issue to the trial court so that she could make a proper assessment of the issue. And so, that is why counsel didn't explain these underlying scientific facts of why this was a critical issue and why it wasn't as the trial court ruled. It wasn't a matter of strategic decision. It wasn't a matter of waiver, res judicata, or any of those things that were addressed in the statements in the order. Trial counsel didn't explain the issue. So, I think that it's both a matter of, I think the court went ahead to the ultimate issue without having the information about why this expert was needed and also why that would have made a difference in this case, which is able to be explained more fully in the briefings. Thank you. Thank you. Any follow-up, Justice Vaughn? No, thank you. Justice Wharton? No. Okay. That concludes the arguments in this matter. It will be taken under advisement and we will issue an order in due course. I want to thank you both for your arguments here today. It's a very interesting case. Clearly. All right. Have a great day.